IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRY DEWAYNE MASON,<br><br>      Petitioner,<br><br>vs.<br><br>BRIAN KIBLER, Acting Warden, High Desert State Prison,[1]<br><br>      Respondent. | No. 2:20-cv-02186-JKS<br><br>MEMORANDUM DECISION |

Garry Dewayne Mason, a state prisoner represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Mason is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at High Desert State Prison. Respondent has answered, and Mason has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On November 28, 2016, Mason was charged in Case No. 16FE022193 (the "DUI case") with four counts related to driving under the influence of alcohol after he crashed his car, which also carried his six-year-old daughter, A., into a pole following an argument with his girlfriend, who had caught him molesting A. in the living room of their apartment. Mason pleaded no contest to Count 2 (driving with a 0.08 percent or higher blood alcohol level) and admitted the attached prior felony allegation, and the remaining counts in the DUI case were dismissed.

After further investigation and while Mason was awaiting sentencing on the DUI case, Mason was also charged in Case No. 16FE023265 (the "sex abuse case") with two counts of

---

[1] Brian Kibler is substituted for Jason Pickett as Acting Warden, High Desert State Prison. FED. R. CIV. P. 25(d).

committing a lewd and lascivious act upon a child under the age of 14 (Counts 1 and 3), one count of penetrating a child 10 years of age or younger (Count 2), and one count of committing a lewd and lascivious act upon a child under the age of 14 by force or fear (Count 4).  He proceeded to a jury trial in December 2017.  On direct appeal of his conviction in Case No. 16FE023265, the California Court of Appeal recounted the facts underlying the charges against Mason and the evidence presented at trial:

> ### A. The Incident on Thanksgiving Day
> [Mason] lived with his girlfriend, Anita, and their infant daughter in Carmichael.  [Mason] and Anita planned to spend Thanksgiving Day, November 24, 2016, with [Mason's] family in Richmond.  At some point, it was decided that A., [Mason's] daughter from a previous relationship, would join them.  A. lived with her mother and visited [Mason] once or twice a month.
> 
> [Mason] and Anita picked A. up and headed for Richmond.  However, [Mason] and Anita began fighting and eventually turned around and returned to Carmichael.  [Mason] and A. went to the store and played with the dog while Anita tended to the baby.  After some time, Anita went into the bedroom with the baby, leaving the door ajar.  [Mason] and A. were alone in the living room.  After approximately thirty minutes, Anita heard A. say, "stop doing that, that hurts."  Anita went to the door and looked out.  She saw A. lying across [Mason's] lap with her face down, and her buttocks in the air.  A.'s pants had been removed, and Anita could see [Mason's] hand in A.'s underwear.  Anita watched for approximately 30 seconds and then entered the room, asking [Mason] "what the fuck was he doing."  [Mason] responded by pulling A.'s underwear down, rubbing her buttocks, and saying "this is my bitch."  [Mason] also declared, "I'm a molester."
> 
> Anita called 911.  Sacramento County Sheriff's Deputy Barron responded and interviewed Anita and A.  Anita told Barron that she saw [Mason] rubbing A.'s buttocks with his hand outside her underwear.  A. told Barron that she had fallen asleep on the couch and had awakened to find [Mason] removing her pants and rubbing her butt.  A. said that she asked [Mason] to stop, but he did not stop until Anita entered the room.  As we shall see, A.'s story changed in the retelling.
> 
> ### B. The Jury Trial
> [Mason] was tried before a jury in December 2017.  During the trial, A., then seven, initially testified that [Mason] touched her private part with his hand, but denied that he penetrated her with his finger.  Moments later, however, she testified that she could not remember being awakened on the couch on Thanksgiving Day.  She acknowledged that testifying was difficult for her.
> 
> A.'s mother, T.C., testified that she received a call from Anita between 10:00 p.m. and 11:00 p.m. on Thanksgiving Day.  Anita told T.C. that she caught [Mason] with his

hand in A.'s underwear.  T.C. went to the apartment to pick A. up.  A. similarly told T.C. that she had been asleep on the couch and awoke to find [Mason's]  hand inside her underwear.  A. told T.C. that [Mason] had been trying to put his fingers inside her.  She also said that she asked [Mason] to stop, but he did not.  Anita and A. both told T.C. that [Mason] said, "I'm a child molester" upon being confronted.

The next morning, A. told T.C. about another incident in which she had been sleeping in the same bed as [Mason], Anita, and the baby.  According to T.C., A. recalled that [Mason] rubbed his "thing" on her "booty coo-coo part," and whispered, "I'm going to eat your pussy."  A. told T.C. that she had not reported this incident before, as [Mason] said that he would "whoop her real bad" if she told, and she was scared.  However, A. believed Anita knew what had happened.

T.C. took A. to the hospital.  A. spoke with an emergency room nurse, Krystyna Ongjoco.  Ongjoco testified that A. reported that her vaginal area hurt because [Mason] put his fingers there the day before.  Police were called.  Deputy Barron responded to the hospital, and spoke with A. for the second time in the emergency room.  Barron testified that he asked A. to tell him again about what had happened the night before.  As before, A. responded that she had been sleeping on the couch and was awakened by [Mason] taking off her pants and rubbing her butt.  This time, however, A. reported that [Mason] had also taken off her underwear, rubbed her genitals, and stuck his fingers inside of her.

Barron testified that A. told him about another incident, some months earlier, in which she had been asleep in a bed with [Mason], Anita, and the baby.  According to Barron, A. reported that [Mason] had been naked and rubbed his penis on her butt.  She tried to roll away, and [Mason] grabbed her leg and pulled her back towards him and said, "get back over here, I'm going to whoop you."  Again, A. told Barron that she had not reported the incident the night before, as [Mason] had threatened to "whoop her."

A. was taken to the Sutter Health Bridging Evidence Assessment and Resources Clinic for a sexual assault examination.  The examination was inconclusive.  The next day, she was interviewed by Tong Vang, a social worker from Child Protective Services (CPS).  Vang testified that A. told her the same thing she told her mother, the emergency room nurse, and, eventually, Deputy Barron: that she had been sleeping on the couch and awoke to find [Mason] removing her clothes, that [Mason] rubbed her private parts underneath her underwear and put his fingers inside her, that she asked him to stop, but he did not.  As before, A. reported that the encounter ended with [Mason] telling Anita, "I'm a child molester."  A. also told Vang about another incident in which a naked [Mason] "rubbed his thing on her butt."  A. told Vang that she tried to get out of bed to tell Anita, but [Mason] grabbed her leg and pulled her back under the covers.

Vang also testified that she spoke with Anita, who claimed that she had only seen [Mason] rubbing A.'s buttocks and was not aware of any other sexual abuse of A.  Vang explained that CPS was not only investigating the alleged abuse of A., it was also assessing Anita for general neglect and failure to protect.  Had Anita been found to have been aware of sexual abuse of A., Vang explained, such a finding could affect her ability to keep her baby.

Anita testified that she was lying down with the baby on Thanksgiving Day when she heard A. say, "stop doing that, that hurts."  She went to the door and saw [Mason's]

3

hands moving around in A.'s underwear. She asked [Mason] "what the fuck was he doing." [Mason] cradled A. in his arms, pulled her underwear down, and said, "this is my bitch." He then said, "[B]itch, I'm a molester." Anita acknowledged that she had dissembled when she told Deputy Barron and the CPS social worker that [Mason] merely rubbed A.'s buttocks outside her underwear. Anita explained that she minimized [Mason's] conduct because she wanted him to send money to provide for the baby, and she feared he might be released from jail and retaliate against her. Anita denied witnessing or hearing about any other incidents of molestation.

  Recordings of [Mason's] jailhouse telephone calls to Anita were played for the jury. In one such call, made before the molestation charges were filed, [Mason] acknowledged that he "let the demons come out," and promised to "never do that shit again." He added that he had read the police report and understood that if Anita were "really hateful towards [him]," she could have made things much worse for him with the police.

  On cross-examination, Anita acknowledged that she had suffered felony convictions for assault with a deadly weapon and grand theft, and a misdemeanor conviction for obtaining money by false pretenses. She also acknowledged that she had not been forthcoming with police and the CPS social worker.

*People v. Mason*, Nos. C086617, C086591, 2019 WL 3774110, at *1-3 (Cal. Ct. App. Aug. 12, 2019).

  At the conclusion of trial, the jury found Mason guilty as charged in the sex abuse case. Mason appeared for sentencing in both cases on January 19, 2018. The trial court sentenced Mason to 35 years to life imprisonment in the sex abuse case as well as a concurrent term of two years' imprisonment in the DUI case. The trial court imposed various fines, fees, and assessments, including a $350 restitution fine, which the court stayed, a $160 court operations assessment, a $120 court facilities assessment, a $600 sexual battery fine, a $500 sexual habitual offender fine plus $130 in related penalty assessments and administrative fees, and victim restitution in an amount to be determined. Mason did not object to any fine, fee, or assessment based on an inability to pay.

  Through counsel, Mason appealed his conviction in both cases. In the consolidated appeal, Mason argued that the trial court committed prejudicial evidentiary errors in the sex

4

abuse case and failed to determine his ability to pay fines, fees, and assessments imposed in both cases. The Court of Appeal rejected Mason's claims of evidentiary error and found his challenge to the fines, fee, and assessments to be forfeited. The Court of Appeal therefore unanimously affirmed the judgment in a reasoned, unpublished opinion issued on August 12, 2019. *Mason*, 2019 WL 3774110, at *10. Mason petitioned for review in the California Supreme Court, which was denied without comment on October 23, 2019. His conviction became final on direct review 90 days later, when his time to file a petition for certiorari in the U.S. Supreme Court expired on January 21, 2020. *See Jiminez v. Quarterman*, 555 U.S. 113, 119 (2009); *Spitsyn v. Moore*, 345 F.3d 796, 798 (9th Cir. 2003).

Mason timely filed a counseled Petition for a Writ of Habeas Corpus in this Court on October 30, 2020. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1),(2).

## II. GROUNDS/CLAIMS

In his counseled Petition before this Court, Mason argues, as he did before the California Court of Appeal on direct appeal, that the trial court erred by: 1) excluding evidence that A. had previously made sexual abuse allegations against third parties; 2) admitting evidence of Mason's uncharged prior sexual misconduct; and 3) imposing fines, fees, and assessments without determining Mason's ability to pay.

III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary

6

authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A. *Evidentiary Errors* (Grounds 1, 2)

Mason first argues that the trial court made two prejudicial evidentiary errors. The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In this context, the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly, limiting them to specific guarantees enumerated in the bill of rights. *Estelle*, 502 U.S. at 73 (citing *Dowling v. United*

7

*States*, 493 U.S. 342, 352 (1990)).  Indeed, the Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."  *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).  In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution."  *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

"The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process."  *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle*, 502 U.S. at 67).  Where a due process violation is alleged stemming from an evidentiary challenge, federal courts review such alleged due process violations for whether admission of certain evidence "so infected the entire trial that the resulting conviction violates due process."  *Estelle*, 502 U.S. at 72.  A habeas petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision."  *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir.), *as amended on reh'g*, 421 F.3d 1154 (9th Cir. 2005).  The "[a]dmission of evidence violates due process only if there are *no* permissible inferences the jury may draw from it."  *Boyde*, 404 F.3d at 1172 (quoting *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991)) (internal quotation marks omitted; emphasis in original); *see also Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (noting that the Supreme Court has not made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of a writ of habeas corpus).

1.   *A's prior allegations*

Mason first argues that the trial court erred in refusing to allow Mason to present evidence of A's previous allegations of sexual assault made against third parties. In considering this claim on direct appeal, the Court of Appeal laid out the following factual background:

> As noted, [Mason] made a series of jailhouse calls to Anita. In one such call, which was not played for the jury, Anita apparently revealed that she told police A. was frequently left unsupervised in the company of some neighborhood boys. On cross-examination, Anita was asked whether she talked to police about A.'s neighborhood. Anita responded that she discussed some of the people that A. spent time with when her mother was gone. [Mason's] trial counsel then attempted to introduce a new topic, apparently related to A.'s interactions with these people. The prosecutor objected and a chambers conference was conducted. Later, [Mason's] trial counsel explained for the record that he had been trying to elicit testimony concerning prior reports of sexual abuse by A., which Anita disclosed to police. According to [Mason's] trial counsel, Anita described her conversation with police, in a recorded call with [Mason], as follows: "I told him about the boys in the apartments, how she'd be left alone. She told us one time she was raped and told us about the pants pulled down. I told the detective, too. And I said she always be at home a lot. She is left unsupervised."
>
> [Mason's] trial counsel argued that he should have been allowed to question Anita about A.'s apparent report—which counsel characterized as "false"—that someone other than [Mason] had sexually abused her. The trial court disagreed, stating the evidence was properly excluded under Evidence Code sections 782 and 352.<sup>FN1</sup> The trial court reasoned that the evidence concerned A.'s sexual history, and therefore implicated section 782, which establishes procedural requirements for admitting evidence of the sexual conduct of a complaining witness.<sup>FN2</sup> (*See People v. Fontana* (2010) 49 Cal.4th 351, 354, 362.) It was undisputed that [Mason] did not comply with these requirements. Accordingly, the trial court concluded the evidence should be excluded under section 782.
>
> > FN1.   Undesignated statutory references are to the Evidence Code.
> >
> > FN2.   Specifically, a defendant must file a motion "stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the complaining witness proposed to be presented and its relevancy in attacking the credibility of the complaining witness." (§ 782, subd. (a)(1).) The motion must be accompanied by an affidavit, filed under seal, containing the offer of proof. (*Id.*, subd. (a)(2).) "If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and at the hearing allow the questioning of the complaining witness regarding the offer of proof made by the defendant."

9

> (§ 782, subd. (a)(3).) At the hearing, the defendant must convince the court the evidence is relevant under section 780 and is not inadmissible under section 352. If the requisite showing is made, the court will issue an order specifying what evidence may be introduced and the nature of the questions to be permitted. (§ 782, subd. (a)(4).)
>
> The trial court then considered the relevance of the proffered evidence, noting that any prior reports of sexual abuse could well be true. The trial court observed that evidence of A. having made such reports was entirely secondhand, consisting solely of Anita's statements to [Mason] that, "She told us one time she was raped and told us about the pants pulled down." The trial court also observed that Anita's statements lacked meaningful context, having been made without elaboration in the course of a hostile phone call in which Anita was torn between wanting to protect A., on the one hand, and herself, on the other. Under the circumstances, the trial court concluded that the evidence of A.'s prior reports was not relevant, as the jury would have no way to assess whether or not they were true.
> The trial court then weighed the probative value of the proffered evidence against their potential for prejudice under section 352. The trial court concluded that the evidence had "nearly zero probative value . . . and is clearly outweighed by a possibility that a trier of fact would not be able to understand what to make of that, meaning improper prejudice or misuse by that type of evidence." Accordingly, the trial court affirmed its earlier ruling excluding the evidence.

*Mason*, 2019 WL 3774110, at *4.

Mason argues, as he did on direct appeal, that § 782 is inapplicable, and that the prior reports were relevant, whether or not they were true. Mason also argues that the trial court erred in its § 352 analysis.[2] In considering Mason's claim on direct appeal, the Court of Appeal assumed, without deciding, that § 782 was inapplicable, and concluded that, even if the trial court erred in its reliance on § 782, the error was harmless because the evidence was properly excluded under § 352.

---

[2] Under that section, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." CAL. EVID. CODE § 352.

10

California Evidence Code § 1103 governs the admissibility of a rape victim's prior sexual history.³ *People v. Chandler*, 65 Cal. Rptr. 2d 687 (Cal. Ct. App. 1997). The California Legislature amended § 1103 to prevent a rape victim from being questioned extensively about any prior sexual history without a showing such questioning was relevant, reasoning that fear of personal questions would deter victims from filing complaints, thus resulting in a lower rate of reported rapes. *People v. Casas*, 226 Cal.Rptr. 285 (Cal. Ct. App. 1986). As a result, § 1103(c) provides that a rape defendant cannot introduce opinion evidence, reputation evidence, and evidence of specific instances of the alleged victim's previous sexual conduct with persons other than the defendant to prove the victim consented to the sexual acts alleged. CAL. EVID. CODE § 1103(c). But because a victim's credibility is virtually always an issue in sexual assault cases, § 782 provides a procedure requiring an *in camera* review of the proffered evidence to diminish the potential abuse of § 1103(c)(4). *See* CAL. EVID. CODE § 782. Thus, the defense may offer evidence to attack the victim's credibility through prior sexual conduct if, after a hearing, the trial court concludes that the proffered evidence's prejudicial effect is substantially outweighed by its probative value under § 352. *Chandler*, 65 Cal. Rptr. 2d at 690.

---

      ³      Section 1103(a)(1) provides that "evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim . . . is not made inadmissible by Section 1101 if the evidence is . . . [o]ffered by the defendant to prove conduct of the victim in conformity with the character or trait of character." CAL. EVID. CODE § 1103(a)(1).

      The foregoing subsection is limited by § 1103(c)(1), which provides in relevant part that in rape cases, "opinion evidence, reputation evidence, and evidence of specific instances of the complaining witness' sexual conduct, or any of that evidence, is not admissible by the defendant in order to prove consent by the complaining witness." *Id.* § 1103(c)(1).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI.  It is well settled that, under the Sixth Amendment, an accused has the right to present witnesses, testimony and other evidence in his defense.  *See Washington v. Texas*, 388 U.S. 14, 19 (1967).  However, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 409-10 (1988).  States have considerable latitude under the Constitution to establish rules excluding evidence from criminal trials.  *Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006).  "Thus, a trial judge may exclude or limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the issues, or misleading the jury.  The trial judge enjoys broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate." *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th Cir. 2005) (citations omitted); *see Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996) (holding due process rights are not violated by exclusion of relevant evidence where probative value is outweighed by danger of prejudice or confusion).

Federal Rule of Evidence 403, the federal counterpart to California Evidence Code section 352, permits the exclusion of evidence if its probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  "A district court is afforded wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and

403 . . . ." *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and Cnty. of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009). California employs a similar rule. *See People v. Harris*, 118 P.3d 545, 565 (Cal. 2005) ("We review for abuse of discretion a trial court's rulings on the admissibility of evidence.").

In *Wood v. Alaska*, 957 F.2d 1544, 1549-50 (9th Cir. 1992), the Ninth Circuit laid out a two-part inquiry to determine whether a petitioner's Sixth Amendment rights are violated by restricted cross-examination. The first inquiry is whether the evidence is relevant. *See id*. at 1550. If the evidence is relevant, the next inquiry is whether other legitimate interests outweigh the defendant's interest in presenting the evidence. *See id*. In *Wood*, the Ninth Circuit explained that there will not be a Sixth Amendment violation "so long as the jury has 'sufficient information' upon which to assess the credibility of a witness." *Id*. (citation omitted).

Under these guidelines, this Court cannot find that the trial court's restriction on the proposed cross-examination was either unreasonable or contrary to federal law. *See Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983) ("Evidence of little importance, whether merely cumulative or of little probative value, will almost never outweigh the state interest in efficient judicial process."). As the appellate court concluded:

> [Mason] argues the prior reports were relevant to impeach Anita, whether or not they were true. According to [Mason], Anita either believed the reports, in which case they were relevant to show that she participated in child endangerment, or she disbelieved them, in which case they were relevant to show that Anita had a poor opinion of six-year-old A.'s reputation for truthfulness. We are not persuaded. Even assuming that Anita believed the reports, any claim that she participated in child endangerment, so far as A.'s exposure to the neighborhood boys was concerned, would have been speculative. What's more, the impeachment value of such a claim would have been minimal compared to other evidence casting doubt on Anita's credibility. Anita was already subject to impeachment for making inconsistent statements regarding the extent of [Mason's] abuse. She was also subject to impeachment with the CPS social worker's testimony that ran the risk of losing custody of her baby, and her own criminal history,

13

> which included crimes of moral turpitude. By contrast, courts have held that child endangerment does not involve moral turpitude, because the crime can be committed by "passive conduct unaccompanied by criminal intent." (*People v. Sanders* (1992) 10 Cal.App.4th 1268, 1274 [interpreting former Pen. Code, § 273a, subd. (1)].) On this record, the trial court could reasonably conclude that evidence of A.'s past reports was irrelevant to impeach Anita, even assuming Anita believed them to be true. To the extent that Anita believed the reports to be false, they were irrelevant for the reasons previously stated. (*People v. Miranda*, *supra*, 199 Cal. App.4th at p. 1424.)

*Mason*, 2019 WL 3774110, at *5.

The Supreme Court's decision in *Davis v. Alaska*, 415 U.S. 308 (1974), does not compel a different conclusion. In *Davis*, the petitioner had been convicted of grand larceny and burglary following a trial in which the trial judge prevented defense counsel from cross-examining a key witness concerning his adjudication as a juvenile delinquent relating to a burglary and his probation status at the time of the events. *Davis*, 415 U.S. at 309-11. Defense counsel sought to introduce the witness's juvenile record on cross-examination not as a general impeachment of the witness's character but rather to show bias and prejudice against the defendant because the witness, who was then on probation, might have identified the defendant out of fear or concern that the police might believe he had committed the crime in issue, thereby jeopardizing his probation. *Davis*, 415 U.S. at 311. Following the affirmance of petitioner's convictions by the Alaska Supreme Court, the United States Supreme Court reversed and remanded, holding that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on the witness's testimony. *Id.* at 317. In particular, the court ruled that counsel should have been permitted to ask the witness not only "whether he was biased," but also "why [he] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." *Id*. at 318. The *Davis* Court emphasized

14

that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316-17.

As discussed above, however, the proffered evidence here does not share the probative value of the evidence at issue in *Davis*. Moreover, the proffered evidence, unlike the evidence at issue in *Davis*, intrudes on the privacy rights of the victim which the California legislature has sought to protect through the enactment of the state's Rape Shield Law. In *Lucas*, the Supreme Court recognized that a defendant's Sixth Amendment rights may be constitutionally limited by a rape shield statute. *Michigan v. Lucas*, 500 U.S. 145, 149 (1991). "To the extent that [the rape shield statute] operates to prevent a criminal defendant from presenting relevant evidence, the defendant's ability to confront adverse witnesses and present a defense is diminished. This does not necessarily render the statute unconstitutional." *Id.* While a defendant's rights may be narrowed, the Court remarked that such restrictions "'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Id.* at 151 (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Therefore the proper question in this case is whether it was "objectively unreasonable" for the California Court of Appeal to conclude that the trial court struck a proper balance between the privacy of the victim and Mason's Sixth Amendment right to examine whether the victim may have acquired sexual knowledge from a source other than Mason's alleged abuse. This Court cannot say that the decision was "objectively unreasonable" given the minimal relevance of the evidence and the "time-consuming digression into sensitive matters having no obvious connection to the matter at hand," *Mason*, 2019 WL 3774110, at *6, that introduction of

the evidence would have required.  Accordingly, § 2254(d) of the AEDPA precludes this court from granting habeas relief on this claim.

Moreover, a state passing a rape shield law makes a "valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy." *Anderson v. Morrow*, 371 F.3d 1027, 1030 (9th Cir. 2004) (internal quotation marks and citation omitted).  Given the weak probative value of the offered evidence, and the compelling interests served in excluding such evidence, Mason cannot show that his rights to present a defense and confront his witnesses were unconstitutionally infringed by the court's ruling.  The state courts' rejection of his claim neither contravened or unreasonably applied federal law, and Mason is not entitled to relief on this claim.

2. *Mason's uncharged prior misconduct*

Mason next contends that the trial court erred in admitting evidence that a partially-undressed Mason had previously crawled into bed with T.C.'s other daughter, J.D., drew her closer when she attempted to push him away, and was found hiding in her room when J.D. awoke.  According to Mason, the trial court erred in relying on California Penal Code § 1108[4] because the uncharged incident did not constitute a "sexual offense" within the meaning of the statute.  Mason further avers that the trial court erred in finding that the evidence was admissible under § 352.

---

[4] That section provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." CAL. EVID. CODE § 1108(a).  Section 1101 provides that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is admissible when offered to prove his or her conduct on a specified occasion." *Id.* § 1101(a).

16

Under § 1108, the prosecution may prove a defendant's propensity to commit sex offenses, *i.e.*, that person's disposition to commit such an act, by offering evidence that he has committed other sex crimes. It is an exception to the general rule, reflected in § 1101, that propensity evidence of prior misconduct is not admissible. *See* CAL. EVID. CODE §§ 1101(a), 1108(a). The relevant portion of § 1108 provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Section 1108 is analogous to Federal Rule of Evidence 413, which provides that, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault." FED. R. EVID. 413(a).

To the extent Mason argues that the trial court erred under state law, he cannot prevail on such claim because, again, "[i]ncorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected." *Lincoln v. Sunn*, 807 F.2d 805, 816 (9th Cir. 1987). So, even if the trial court erred in its application of §§ 352 and 1108, such error is not a ground for federal habeas relief. *See Estelle*, 502 U.S. at 67-68.

Moreover, the record amply supports the Court of Appeal's reasoned determination that "[a] reasonable jury could conclude that a young girl, having been awakened by heavy breathing, by a semi-nude man in her bed, in the middle of the night, has been subjected to objectively and unhesitatingly irritating or annoying conduct, and could further infer that the man who engaged in such conduct was motivated by an abnormal sexual interest in children." *Mason*, 2019 WL 3774110, at *8. Further, the Ninth Circuit has repeatedly barred federal habeas petitioners from challenging the constitutionality of prior sexual misconduct evidence admitted to show

17

propensity pursuant to California Evidence Code § 1108. *See, e.g., Greel v. Martel*, 472 F. App'x 503, 504 (9th Cir. 2012) ("Ninth Circuit precedent 'squarely forecloses [the] argument' that admission of evidence of sexual misconduct to show propensity violates due process.") (quoting *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008)); *Sanches v. Hedgpeth*, 381 F. App'x 710, 711 (9th Cir. 2010) ("[T]he Supreme Court has never held that the admission of prior sexual misconduct to lend credence to a victim's claims to be unconstitutional."); *Mejia*, 534 F.3d at 1046 (on AEDPA review, upholding admission of evidence of prior uncharged sexual offenses in support of rape charges). In so holding, the Ninth Circuit has cited the United States Supreme Court's express refusal to decide the issue. *See Estelle*, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.").

In the absence of clearly established Supreme Court law on this issue, AEDPA relief is foreclosed. *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law") (citation, internal brackets and quotations omitted). Because the state courts' rejection of this claim was not contrary to, or an unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court, Mason's challenge to the admission must fail.

18

In any event, the Court of Appeal's § 352 analysis is well supported by the record. The appellate court reasonably determined that the probative value of the evidence was not substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice. As that court explained:

> The uncharged offense against J.D. was probative of [Mason's] propensity to be attracted to sleeping girls, and to act on that attraction. It was not remote in time, and there was little risk of confusing or misleading the jury. [Mason] argues the offense against J.D. was not sufficiently similar to the charged offenses. But all of the offenses involved [Mason] waking a child in a state of undress and resisting attempts to get away from him. That J.D. was older than A., and managed to summon T.C. before an unlawful touching could occur, does not render the uncharged offense so dissimilar as to establish an abuse of discretion. Nor was there any abuse of discretion in the trial court's determination that the probative value of the evidence outweighed its prejudicial effect. To the contrary, the trial court carefully weighed the probative value of the proffered evidence against its potential for prejudice and reasonably concluded that the evidence was admissible. The trial court did not abuse its discretion.

*Mason*, 2019 WL 3774110, at *8.

For these reasons, the Court of Appeal's rejection of Mason's claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Mason is thus not entitled to relief on this claim.

B.   *Erroneous Imposition of Fines, Fees, and Assessments* (Ground 3)

Finally, Mason claims that the trial court erred in imposing fines, fees, and assessments without first considering his ability to pay. This Court, however, does not have jurisdiction over a challenge to a restitution order imposed in state court. A petition for a writ of habeas corpus can be entertained only on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Ninth Circuit has held that "§ 2254(a) does not confer jurisdiction over a habeas corpus petition raising an in-custody challenge to a restitution order." *Bailey v. Hill*, 599 F.3d 976, 984 (9th Cir. 2010)

(footnote omitted).  "[T]he remedy that [Petitioner] seeks, the elimination or alteration of a money judgment, does not directly impact—and is not directed at the source of the restraint on—his liberty." *Id*. at 981.  A federal court, then, lacks jurisdiction to hear claims that challenge the money portion of a state judgment, such as a restitution order, which does not affect the duration of custody.  *Id.*

## V. CONCLUSION AND ORDER

Mason is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: February 19, 2021.

                                                  /s/James K. Singleton, Jr.
                                                  JAMES K. SINGLETON, JR.
                                                 Senior United States District Judge